

**FILED**

Aug 15 2013, 5:36 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

ADRIAN JACKSON,                        )
                                       )
   Appellant-Defendant,               )
                                       )
       vs.                        )    No.  49A04-1211-CR-553
                                       )
STATE OF INDIANA,                      )
                                       )
   Appellee-Plaintiff                 )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-1203-FB-15542

**August 15, 2013**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

In this case, a criminal defendant asserted his constitutional right to self-representation but unfortunately discovered that proceeding pro se is riddled with pitfalls. Following a jury trial, the appellant-defendant, Adrian Jackson, was found guilty of Counts I and II, class B felony Criminal Confinement,[1] Counts III, IV, and V, class B felony Robbery,[2] and Counts VI and VII, class C felony Battery.[3] Following a sentencing hearing, the trial court sentenced Jackson to an aggregate term of thirty years.

Jackson appeals, requesting a new trial with new counsel. Jackson claims that the trial court failed to inquire into his appointed counsel's alleged conflict of interest when Jackson advised the court that he wished to proceed pro se and that the trial court should have appointed him alternative counsel. Jackson also claims that the trial court violated his Sixth Amendment right to counsel because he did not make a knowing, voluntary, and intelligent waiver of this right.

Concluding that the trial court had no duty to inquire into Jackson's conflict of interest allegations or to appoint Jackson alternative counsel when he decided to proceed pro se and that Jackson made a knowing, voluntary, and intelligent waiver of his right to counsel, we affirm the judgment of the trial court.

---

[1] Ind. Code § 35-42-3-3.

[2] I.C. § 35-42-5-1.

[3] I.C. § 35-42-2-1.

FACTS

On March 7, 2012, around 4:30 p.m., Officer Ryan Irwin of the Indianapolis Metropolitan Police Department (IMPD) responded to the dispatch of a robbery in progress at the Oriental Market (Market), a grocery store on Lafayette Road owned by Bay Le Zhu (Zhu) and her husband. Officer Irwin arrived within one minute and found that the employees, two of whom had obvious injuries, and Zhu's six-year-old son Brian were locked inside the Market. Officer Irwin also found a twelve gauge shotgun lying on the ground next to the Market.

It was later established that Zhu, Brian, Zhu's nephew Yixiu Chen (Yixiu), and family friends Kia Wong (Wong) and his wife, Cai Nong Chen (Cai), were all at the Market when Jackson and two other men, each armed and wearing dark clothing, gloves, and masks, entered the Market through a back door and locked the door behind them. The men confined everyone in the kitchen, striking several of the victims with their guns and binding their hands and legs with duct tape. After the men demanded money, Zhu gave them $1200 that she had in her pocket and was escorted out of the kitchen to the cash register, where the men took additional money. When Van Duong, a regular customer, came by, he noticed that the door was locked even though the lights were on and the "open" sign was displayed. Suspicious, Duong peered through the Market window and observed masked men but none of the store employees. When he looked again, he saw Zhu taking money from the register, and she gave him a sign to call for help.

3

Jackson and the other men escaped in Wong's car, taking with them Wong's cell phone, Yixiu's cell phone and a bunch of keys, including his house and the Market keys, Zhu's purse and keys, the $1200 that Zhu had on her, and the money from the cash register. Duong got a good look at Jackson and provided the license plate number of the getaway vehicle to the 911 dispatcher. He also reported that the vehicle had traveled south on Lafayette Road. Officers located the vehicle after a citizen reported seeing someone flee from it.

At around 5:00 p.m., Jackson and his co-defendant Kenneth McBride[4] were apprehended. They were found crouched down between a wood deck area and a garage, wearing dark clothing and shoes matching those worn by the robbers. Around and under the deck where Jackson and McBride were apprehended, the officers recovered several pieces of dark clothing, including a stocking cap mask, three dark gloves, a distinctive jacket worn by one of the men during the robbery with a Bic lighter in it that matched McBride's DNA, multiple cell phones, a set of keys, and a small purse, all of which were items taken from the victims during the robbery. Additionally, a piece of foreign currency and a rifle with Jackson's DNA were recovered. Police officers also found $1106 on Jackson and $622 on McBride.

Jackson and McBride were arrested and taken to the police station, and Zhu, Cai, Wong, and Duong were brought over for a show-up identification. All but Wong identified either one or both men as the robbers with seventy to one hundred percent

---

[4] Kenneth McBride's appeal has been assigned appellate cause number 49A05-1211-CR-547, and we hand down that appeal contemporaneously with this one.

certainty. Duong positively identified both men, stating that Jackson was the driver and that McBride was the front seat passenger in the getaway vehicle.

On March 9, 2012, the State charged Jackson with Counts I and II, class B felony criminal confinement, Counts III, IV, and V, class B felony robbery, and Counts VI, VII, and VIII, class C felony battery. On March 13, 2012, the trial court held an initial hearing and found that Jackson was not indigent. However, during a pretrial conference hearing on April 19, 2012, the trial court found Jackson indigent and appointed him a public defender. On May 10, 2012, the trial court appointed attorney Josh Moudy to defend Jackson.

On August 9, 2012, Jackson informed the trial court that he wanted to proceed pro se. At a hearing on August 16, 2012, the trial court questioned Jackson about his knowledge of the requirements for pro se litigants and advised Jackson of the responsibilities he would have to assume by representing himself along with the disadvantages and dangers he may face. The trial court also verified that Jackson had the educational background and mental capacity to defend himself and that no one had made promises or threats to coerce him into waiving his right to counsel. After the trial court had read the advisement of rights to Jackson, he still insisted on representing himself and signed a written advisement form stating that he had thoroughly reviewed all the dangers and disadvantages of self-representation and had full knowledge of them. Although the trial court granted Jackson's request to proceed pro se, it also appointed Jackson with

5

"standby counsel" who could answer any of his questions about trial procedure during the trial but could not actively represent him at the trial.

A jury trial was held from September 17-19, 2012. On September 19, 2012, the State dismissed Count VIII due to evidentiary issues, and the jury found Jackson guilty on Counts I through VII. During Jackson's sentencing hearing on October 5, 2012, the trial court merged Count I into Count II, Count VI into Count III, and Count VII into Count IV. The trial court then sentenced Jackson to six years of incarceration on Count II and to eight years each on Counts III, IV, and V, with each sentence to run consecutively, for a total aggregate sentence of thirty years. Jackson now appeals.

DISCUSSION AND DECISION

Jackson alleges that his Sixth Amendment right to counsel was violated because he did not make a knowing, voluntary, and intelligent waiver of his right to counsel when the trial court granted his request to proceed pro se. He points out that when he expressed his concerns about the appointed counsel working for the State, the trial court did not inquire into his allegation of this being a conflict of interest and did not appoint him with alternative counsel, thus leaving him with no choice other than to proceed pro se. Essentially, Jackson suggests that we find invalid his waiver of right to counsel not because the trial court failed to advise him properly on self-representation, but because the trial court failed to inquire into his allegation of a conflict of interest, for which he presented no evidence, or appoint him new counsel.

6

Jackson's claim cannot be analyzed as one issue as he suggests. Rather, we separate Jackson's arguments into two issues and discuss them separately, as one argument does not logically lead to the other.

## I. Conflict of Interest

We review a trial court's decision to appoint counsel to an indigent defendant only for an abuse of discretion. Smith v. State, 474 N.E.2d 973, 978-79 (Ind. 1985). "The right to counsel in a criminal proceeding does not mean that the defendant has an absolute right to be represented by counsel of his own choosing." Id. at 979. A trial court may, in the exercise of its sound discretion, deny a defendant's request for a new court-appointed attorney. Luck v. State, 466 N.E.2d 450, 451 (Ind. 1984). Our Supreme Court, in State v. Irvin, noted that the services of an attorney appointed by the trial court may not be forced upon an indigent defendant but if the defendant refuses to be represented by the appointed counsel, then the defendant must find some method to employ his own counsel or proceed pro se. 259 Ind. 610, 615-16, 291 N.E.2d 70, 74 (1973).

The Sixth Amendment generally does not impose a duty on the trial court to inquire into a defendant's conflict of interest claim. Johnson v. State, 948 N.E.2d 331, 335-36 (Ind. 2011). Instead, the presumption is that the appointed defense counsel is competent. Irvin, 259 Ind. 610, 614, 291 N.E.2d 70, 73. This presumption can be overcome only if it is shown that the attorney's actions or inactions made the proceedings a mockery and constituted a shock to the conscience of the court. Id.

7

In the instant case, the trial court appointed defense counsel to represent Jackson as guaranteed by the Sixth Amendment. However, prior to his trial, Jackson expressed to the trial court his concerns about his appointed counsel working for the State and asked to proceed pro se. He did not ask the court to appoint him substitute counsel. Other than his bald accusations, Jackson presented no evidence to support his allegation that his defense counsel was working for the State.

After reviewing the record, it is obvious that Jackson's allegations concerning his appointed counsel's alleged conflict of interest are vague, lack merit, and basically indicate Jackson's lack of confidence in Court-appointed counsel. The trial court afforded Jackson many opportunities to present evidence or give specific instances of what his counsel did or did not do by asking him general and specific questions as to how Jackson's counsel was "helping" the State. Tr. p. 443. Jackson could not point to any specific acts his counsel had taken that appeared detrimental to his interests and intended to assist the prosecution. Instead, Jackson kept repeating that his counsel was "helping" the State and "trying everything" against him. Id. at 443. Therefore, Jackson failed to overcome the presumption that his appointed counsel was competent to represent him.

The trial court also did not err in failing to appoint Jackson with alternative counsel because Jackson never requested substitute counsel and made it clear that he wanted to proceed pro se. However, even if Jackson had asked for alternative counsel, he was not entitled to different counsel when he presented no evidence that his appointed counsel was working for the State. Like our Supreme Court stated in Irvin, if Jackson

8

refused to be represented by the counsel appointed by the trial court, Jackson's options were to employ his own counsel or to proceed pro se, and Jackson opted to proceed pro se. 259 Ind. 610, 615-16, 291 N.E.2d 70, 74.

Jackson directs us to Holloway v. Arkansas and Cuyler v. Sullivan in support of his position that a conflict of interest existed in his own case. 435 U.S. 475 (1978); 446 U.S. 335 (1980). However, Jackson's reliance on these cases is inapposite as they do not apply to his situation. In Holloway, three defendants were represented by the same counsel in a single trial over defense counsel's objection to the trial court that he could not adequately represent the defendants' conflicting interests. 435 U.S. at 477-80. Similarly, in Cuyler, three defendants, each accused of murder, were tried separately but represented by the same counsel. 446 U.S. at 337-39, 350. The United States Supreme Court held that both cases dealt with potential conflicts of interest because in each case, the same counsel was appointed to either defend multiple co-defendants in a single trial or to defend multiple co-defendants in separate trials.

In this case, however, Jackson failed to show the existence of a potential conflict of interest. Put another way, we find that Jackson failed to establish that his counsel was burdened by a conflict of interest sufficient to trigger the trial court's Sixth Amendment duty of inquiry under Holloway and Cuyler. The record thus showed no material basis for an alleged conflict of interest, leaving the trial court with nothing into which to inquire.

## II. Waiver of the Right to Counsel

Jackson also alleges that the trial court violated his Sixth Amendment right to counsel because he did not make a knowing, voluntary, and intelligent waiver of his right to counsel. Jackson claims he only waived his right to counsel because he did not want to be represented by his appointed counsel and the trial court would not appoint him alternative counsel.

We review de novo a trial court's finding that a defendant waived his right to counsel. Miller v. State, 789 N.E.2d 32, 37 (Ind. Ct. App. 2003). A criminal defendant's Sixth Amendment right to counsel is essential to the fairness of a criminal proceeding. Drake v. State, 895 N.E.2d 389, 392 (Ind. Ct. App. 2008). Implicit in the right to counsel is the right to self-representation. Id. However, before a defendant waives his right to counsel and proceeds pro se, the trial court must determine that the defendant's waiver of counsel is knowing, voluntary, and intelligent. Jones v. State, 783 N.E.2d 1132, 1138 (Ind. 2003).

When a defendant asserts his or her right to proceed pro se, the trial court must "acquaint the defendant with the advantages to attorney representation and the disadvantages and the dangers of self-representation." Id. Our Supreme Court has stated that there are no specific "talking points" a trial court must follow when advising a defendant of the dangers and disadvantages of proceeding without counsel. Poynter v. State, 749 N.E.2d 1122, 1126 (Ind. 2001). Instead, a trial court needs only to come to a

10

"considered determination" that the defendant is making a knowing, voluntary and intelligent waiver of his or her right to counsel. Id.

Our Supreme Court has adopted four factors for a trial court to consider when determining whether a knowing, voluntary, and intelligent waiver has occurred:

> (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence into the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se.

Id. at 1127-28. In making this analysis, a trial court is in the best position to assess whether the defendant has made a knowing, voluntary, and intelligent waiver, and the trial court's finding will most likely be upheld "where the judge has made the proper inquiries and conveyed the proper information, and reaches a reasoned conclusion." Poynter, 479 N.E.2d at 1128.

We find Jackson's involuntary waiver claim somewhat confusing because he does not claim that the trial court failed to advise him of the advantages of having an attorney represent him. He makes no argument that the four Poynter factors were not met in his case. Accordingly, we conclude that Jackson has waived this issue by failing to present a cogent argument. See Daniels v. State, 515 N.E.2d 530, 530 (Ind. 1987) (waiving a defendant's insufficiency of the evidence claim for failure to present a cogent argument). Waiver notwithstanding, we find that the Poynter factors were satisfied.

The first two factors set forth in Poynter focus on whether the defendant had sufficient information about the dangers and disadvantages of self-representation, either

11

through the trial court's inquiry or through any other evidence in the record. Here, during Jackson's advisement of rights hearing on August 16, 2012, the trial court asked Jackson questions about proceeding pro se. Jackson told the trial court that he based his decision to proceed pro se on his perception that his counsel would not represent him adequately due to a conflict of interest. The trial court asked if Jackson understood the charges against him and explained the possibility that there might be lesser included offenses that could be part of the case. Tr. p. 447. Jackson was advised of the advantages counsel could provide him. Specifically, the trial court asked if Jackson understood that counsel would be better at investigating the case because counsel is not in confinement and could speak to people and get witnesses to testify on his behalf and also because counsel has been specifically trained in trial procedure. Id. at 444-45. Jackson answered in the affirmative but still insisted on proceeding pro se. Id.

The trial court also warned Jackson about the dangers and disadvantages of self-representation, informing him that he would be responsible for challenging any juror during voir dire and making opening and closing arguments. Tr. p. 441. Moreover, Jackson was advised that it would be harder for him to prepare and present his case while he is sitting in jail and that he is at a disadvantage because the State is represented by an attorney. Id. at 445-46. The trial court also warned Jackson that "it will be a disadvantage for him when trying to elicit testimony from himself because he would not have an attorney asking him questions and that Jackson is going to have to speak." Id. at 446. Jackson was also asked if he understood that the State would likely be making a lot

12

of objections and that those objections would probably be sustained and that this could lead to frustration by Jackson. Id. Finally, the trial court advised Jackson that his decision to represent himself did not mean he would be treated specially during the course of the trial. Id. at 448.

Here, the record not only showed that the trial court fully explained to Jackson the advantages of having counsel represent him and all the possible dangers and disadvantages of self-representation but also that Jackson understood the trial court's warnings. Jackson's obvious intelligence and grasp of the issues surrounding his trial, as well as the dangers and disadvantages impressed on him by the trial court, lead us to conclude that Jackson understood the difficulties and dangers of self-representation.

The third Poynter factor concerns whether a defendant has the background and experience necessary to make a knowing, voluntary, and intelligent waiver of his right to counsel. In Taylor v. State, this Court held that the defendant's decision to proceed pro se was knowingly, voluntarily, and intelligently made where the trial court explained to the defendant that it was ill-advised to proceed pro se when facing serious criminal charges, warned the defendant of the charges he could face, inquired into the defendant's education, and confirmed the defendant's previous contacts with the criminal justice system, which included convictions for five felonies and eight misdemeanors. 944 N.E.2d 84, 91 (Ind. Ct. App. 2011).

We conclude that Jackson's case is analogous to Taylor. Here, the trial court questioned Jackson about his educational background and whether he had the mental

13

capacity to conduct the trial on his own. Tr. p. 447. Jackson said he did not have the educational background but insisted he did not want to be represented by the court-appointed counsel. Id. He was also questioned on what he knew about the rules of evidence. He responded by saying he would stay in the library and keep working on his case the best way he could and that he would be prepared for the trial. Id. at 442. Additionally, Jackson has had previous contacts with our criminal justice system that, according to the Presentence Investigation Report, include juvenile adjudications for class D felony offenses of attempted theft and possession of cocaine, and misdemeanor offenses of criminal mischief, trespass, and conversion. PSI p. 5-7. And as an adult, Jackson had prior convictions for class D felony auto theft, class C felony carrying a handgun without a license, and misdemeanor conversion. Id. at 7-10. Thus, Jackson was no stranger to the criminal justice system and obviously knew he had the right to counsel. Tr. p. 447. Moreover, if he had any problems during the trial with the legal process, the standby counsel was there to answer his questions. Id.

Finally, the fourth Poynter factor examines the context of the defendant's decision to proceed pro se. If a defendant's decision to proceed pro se appears tactical, then this factor weighs in favor of finding a knowing, voluntary, and intelligent waiver. Poynter, 749 N.E.2d at 1128 n.6. Jackson believed representing himself was to his strategic advantage because he thought his appointed counsel had a conflict of interest. He waited until a month before the trial date to express his dissatisfaction with his court-appointed counsel. Jackson brought his claim against his counsel during the advisement of rights

14

hearing on August 16, 2012, one month prior to his trial set for September 17, 2012. If the trial court decided to appoint Jackson new counsel, this would have led to a continuance and further delay of the case.

Subsequently, Jackson was insistent that he wanted to represent himself and told the trial court that he would go to the law library to prepare his case and would be ready for his trial. Tr. p. 442. Having been convicted, Jackson now comes before this Court alleging his waiver of counsel was not knowing, voluntary, and intelligent because his strategy failed. If Jackson truly felt proceeding pro se was not in his best interest, he would have pleaded to the trial court to appoint him another counsel. This he never did. However, since Jackson has had numerous involvements with the court system, it is likely that he had been represented by a public defender in the past and felt that it would be a better tactical move to proceed pro se this time around.

Moreover, it does not appear from the record that Jackson was coerced into his decision to proceed pro se. The trial court questioned Jackson on whether anyone made any promises or threats to get him to waive his right to counsel and specifically asked if his decision to proceed pro se was made of his own free will. Jackson acknowledged that no one made any threats or promises to him about waiving his right to counsel and indicated that his decision to proceed pro se was made freely and voluntarily. Tr. p. 448. Jackson also denied being influenced to proceed pro se by his co-defendant. Id.

15

In conclusion, we find that the trial court properly inquired into Jackson's request to proceed pro se and provided him with sufficient advisements related to his decision to forfeit that right. Jackson also signed a written advisement form that stated that he had thoroughly reviewed all the dangers and disadvantages of self-representation and had full knowledge of them. Jackson cannot now contend that his waiver of his right to counsel was not knowing, voluntary, or intelligent just because his choice to proceed pro se was due to his dissatisfaction with the way his appointed counsel was representing him.

We therefore conclude that Jackson was not denied his Sixth Amendment right to counsel and that the trial court properly determined that Jackson's waiver of his right to counsel was knowing, voluntary, and intelligent. As a result, we decline to disturb Jackson's convictions.

The judgment of the trial court is affirmed.

MAY, J., and MATHIAS, J., concur.