## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT

Ruth Johnson
Matthew D. Anglemeyer
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Eugene Dullen,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 15, 2016

Court of Appeals Case No.
49A02-1506-CR-505

Appeal from the
Marion Superior Court

The Honorable
Stanley E. Kroh, Judge Pro Tempore

Trial Court Cause No.
49G03-1211-FB-74483

**Kirsch, Judge.**

Eugene Dullen ("Dullen") appeals the trial court's revocation of his placement in Marion County Community Corrections ("Community Corrections"), raising the following restated issue: whether, in connection with his Community Corrections violation, Dullen's waiver of counsel was knowing, voluntary, and intelligent in light of the trial court's advisements about the dangers and pitfalls of representing himself.

We affirm.

## Facts and Procedural History

On March 1, 2013, Dullen pleaded guilty pursuant to a plea agreement and was convicted of Class C felony[1] criminal confinement resulting in bodily injury. As part of the plea agreement, Dullen admitted to being a habitual offender. *Appellant's App.* at 25, 78-80. The trial court sentenced him to an aggregate executed sentence of seven years, five years in the Indiana Department of Correction ("the DOC") and two years in work release through Community Corrections. During and after his incarceration, Dullen filed several pro se pleadings, including two motions to correct erroneous sentence, a petition for an order clarifying concurrent sentencing, and a petition for waiver of Community Corrections fees. *Id.* at 99, 112, 128, 146.

---

[1] We note that Dullen committed his crimes before the Indiana General Assembly changed felony offenses from classes of felonies to levels of felonies.

[4] On October 29, 2014, having completed his sentence in the DOC, Dullen began serving his two-year term in Community Corrections and was housed at the Duvall Residential Center ("the Center"). Most weeks, the Center provided Dullen with a pass that allowed him to leave the Center and go to the law library. On March 6, 2015, Dullen left the Center after his case manager ("the Case Manager") issued him a pass. *Tr.* at 76. Dullen was told to return to the Center no later than 5:30 p.m.; however, four hours after that deadline, Dullen had not returned. *Id.*; *Appellant's App.* at 149. Corrections officers and the Case Manager contacted local hospitals and called Dullen's emergency contacts without success. Dullen did not contact the Center and remained "unmonitored for a period of ten days." *Tr.* at 77-78, 81, 89. Community Corrections filed a notice of violation, alleging that Dullen's failure to return to the Center violated the terms of Community Corrections. *Appellant's App.* at 149.

[5] On March 17, 2015, the trial court held a hearing on the Community Corrections violation.[2] During that hearing, the trial court advised Dullen of his rights, including, that if Dullen could not afford an attorney, an attorney would be appointed at no cost to him. *Tr.* at 24. The trial court asked Dullen if he intended to hire an attorney, to which Dullen replied, "No, I do not." *Id.* at 25. The trial court also asked Dullen if he was "asking the court to appoint an

---

[2] At that time, Dullen also had a pending petition for post-conviction relief, which the trial court addressed at the March hearing. The substance of that petition, however, is not relevant to this appeal.

attorney to represent [him]." *Id.* Again, Dullen replied, "No, I am not." *Id.*
When asked whether he wanted to represent himself, Dullen said, "Yes." *Id.* at
25-26. The trial court responded:

> Okay. Well, I would recommend you consider talking with an
> attorney before you make these decisions, but that's your call.
> You have the constitutional right to represent yourself if you
> choose to. My concern is if you don't have legal experience or
> training, you might miss an issue or some mitigating factor that
> an attorney might be able to spot on your behalf.
>
> I would also tell you, if I was in your situation, I would want to
> talk with an attorney before making any decisions. But, again,
> that's your decision. If you choose to represent yourself, you
> have the absolute constitutional right to do that. And is that
> what you want to do? You want to represent yourself?

*Id.* at 26. Dullen noted, "I can talk to the attorney, but I don't feel that the
attorney is going to represent me as I need to be represented." *Id.* Thereafter,
the trial court appointed counsel for Dullen "for the time being," and informed
him that his attorney would meet him for his next hearing. *Id.* at 27.

[6] On March 18, 2015, Dullen signed an advisement of rights form in connection
with the Community Corrections violation, which again informed Dullen,
"You also have the right to have an attorney represent you in this proceeding.
You may hire an attorney of your choosing or, if you cannot afford to hire your
own attorney, the court can appoint an attorney to represent you at no cost to
you." *Appellant's App.* at 150. By signing this form, Dullen confirmed that he
had read and understood his rights. *Id.*

An evidentiary hearing was held on May 19, 2015, to again address both Dullen's petition for post-conviction relief and his Community Corrections violation. At the start of the hearing, the trial court once more stated, "I want to make sure you don't want to talk with an attorney about the Community Corrections violation." *Tr.* at 36. Dullen responded, "No, I don't." *Id.* As Dullen began to testify, the trial court immediately said,

> And you do understand that you have the right—on the Community Corrections violation, you have the right to be represented by an attorney. And if you can't afford to hire an attorney, the Court will appoint an attorney to represent you at no cost to you. Do you understand that?"

*Id.* Dullen said that he understood, explaining: "At . . . this time in my life, and in view of the misrepresentation that I have experienced through the Public Defender's Office, there is no way that I would have a public defender represent me in anything." *Id.* at 37. The trial court opined, "I suspect it's more of a miscommunication or a misunderstanding rather than not being represented properly . . . but the court will have to look at that in the [petition for post-conviction relief]." *Id.* The trial court continued:

> [THE COURT:] [I]f I was in your shoes, I would want to talk with a lawyer before I made any decisions regarding the Community Corrections violation. . . . The thing is you're looking at, if they prove the violation, the Court would likely order that you be returned to the Department of Correction to finish out the sentence.
>
> THE PETITIONER: I would object.

THE COURT: Well – and I am just explaining that I – in the Court's view, you'd be better off talking with an attorney rather than representing yourself if you don't have training and experience [with] these matters. But again, that's your choice. If you choose to represent yourself, you have the right to do that.

*Id*. at 37-38.

[8] As the hearing continued, Dullen complained that he was being restricted in the presentation of his evidence. The trial court offered, "[Y]ou've got the right to your opinion. But the thing is, you are held to the same standard as any other attorney would be in representing yourself." *Id*. at 47. Just prior to hearing evidence on the Community Corrections violation, the trial court asked Dullen one final time if he wanted to consult with an attorney, to which Dullen responded that he wanted to get the proceeding out of the way. *Id*. at 64-65. As to the violation, the State offered the testimony of the Case Manager, who testified that Dullen, in violation of his terms of Community Corrections, had failed to return to the Center after a visit to the library. *Id*. at 76-81. Although, Dullen testified as to the extenuating circumstances he believed excused his failure to return, the trial court found Dullen had committed a Community Corrections violation and ordered him to serve the remainder of his sentence in the DOC. Dullen now appeals.

## Discussion and Decision

[9] We begin by noting that in its appellee's brief, filed with this court on November 2, 2015, the State maintained that Dullen's impending release from

the DOC—projected as November 7, 2015—caused his case to be moot, and therefore should be dismissed. *Appellee's Br.* at 8. Citing to *Breedlove v. State*, 20 N.E.3d 172, 174 (Ind. Ct. App. 2014), *trans. denied,* the State argued, "When this court is unable to provide effective relief upon an issue, it is deemed moot, and this Court will not reverse the trial court's determination when no change in the status quo will result." *Id.* On December 22, 2015, this court issued an order to show cause, asking Dullen to declare whether he had been released from the DOC, and, if so, why his appeal should not be dismissed as moot.

[10] In his timely filed Verified Response,[3] Dullen concedes that he was released from the DOC following the completion of his sentence but cites to two reasons why his case should not be dismissed as moot: (1) the collateral consequences of allowing the Community Corrections violation to remain on his record; and (2) whether his waiver of counsel was knowingly, voluntarily, and intelligently made is a question of great public interest.

[11] As to the first reason, Dullen offers, "Rendering the appeal moot overlooks the collateral consequences of a community corrections revocation, such as the fact that such revocation will thereafter be included in Dullen's criminal history and that it could be used as a statutory aggravator in the future." *Verified Response* at 4. It is true that a single aggravating factor may support the imposition of an enhanced sentence. *Field v. State*, 843 N.E.2d 1008, 1011-12 (Ind. Ct. App.

---

[3] Dullen filed *Appellants Verified Response to this Court's Order to Show Cause* with this court on January 6, 2016. For ease of reference, we will refer to this document, and cite to it, as "Verified Response."

2006), *trans. denied*. Further, "history of criminal or delinquent behavior" is considered by the courts as an aggravating factor. Ind. Code § 35-38-1-7.1. That being said, Dullen's criminal history began in 1968 with convictions for operating a vehicle with no license and while under the influence. From 1982 through 1990, Dullen was convicted of attempted burglary, battery, and possession of cocaine. In 1995, Dullen was convicted of eight counts of criminal confinement and was found to be a habitual offender. In light of his extensive criminal history, the inclusion of the revocation of Dullen's placement in Community Corrections as part of his criminal history will have little, if any, collateral consequences.

[12] As to the second consideration, Dullen argues that moot questions may still be addressed on their merits.

> [A]lthough moot cases are usually dismissed, Indiana courts have long recognized that a case may be decided on its merits under an exception to the general rule when the case involves questions of great public interest. Cases in this category typically raise important policy concerns and present issues that are likely to recur.

*Verified Response* at 2 (citing *Breedlove*, 20 N.E.3d at 17 (citations omitted) (internal quotation marks omitted). Dullen asserts that the issue before this court is not, as the State asserts, whether Dullen was properly committed to the DOC for his Community Corrections violation. Instead, the issue is whether Dullen knowingly, voluntarily, and intelligently waived his right to counsel, which he asserts is a question of great public interest that may be addressed as

an exception to the general rule that a moot issue must be dismissed. Because this court has previously recognized waiver of counsel as a claim that "reflects a question of great public importance and involves issues likely to recur," we will address Dullen's waiver claim. *See A.S. v. State*, 929 N.E.2d 881, 887 (Ind. Ct. App. 2010) (court addressed waiver of counsel claim, notwithstanding issue was moot since child was no longer in detention, under mootness exception that claim was "question of great public importance and involve[d] issues likely to recur")

[13] Dullen alleges that his Sixth Amendment right to counsel was violated because he did not make a knowing, voluntary, and intelligent waiver of his right to counsel during the evidentiary hearings addressing his Community Corrections violation. Dullen argues that his waiver cannot be knowing, voluntary, and intelligent when "[t]he primary reason [he] wished to represent himself is because he felt he had received poor representation from Public Defenders in the past." *Appellant's Br*. at 4.

[14] We review de novo a trial court's finding that a defendant waived his right to counsel. *Jackson v. State*, 992 N.E.2d 926, 932 (Ind. Ct. App. 2013), *trans. denied*. "A criminal defendant's Sixth Amendment right to counsel is essential to the fairness of a criminal proceeding." *Id*. "Implicit in the right to counsel is the right to self-representation." *Id*. However, before a defendant waives his right to counsel and proceeds pro se, the trial court must determine that the defendant's waiver of counsel is knowing, voluntary, and intelligent. *Id*. (citing *Jones v. State*, 783 N.E.2d 1132, 1138 (Ind. 2003)). "Waiver of assistance of

counsel may be established based upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Jones*, 783 N.E.2d at 1138.

[15] When a defendant asserts his right to proceed pro se, the trial court must "acquaint the defendant with the advantages to attorney representation and the disadvantages and the dangers of self-representation." *Jackson*, 992 N.E.2d at 932. There are no specific "talking points" a trial court must follow when advising a defendant of the dangers and disadvantages of proceeding without counsel. *Kowalskey v. State*, 42 N.E.3d 97, 104 (Ind. Ct. App. 2015) (quoting *Poynter v. State*, 749 N.E.2d 1122, 1126 (Ind. 2001)). Instead, a trial court needs only to come to a "'considered determination' that the defendant is making a knowing, voluntary, and intelligent waiver of his or her right to counsel." *Drake v. State*, 895 N.E.2d 389, 392 (Ind. Ct. App. 2008) (citing *Poynter*, 749 N.E.2d at 1126).

[16] Our Supreme Court has adopted four factors to consider when determining whether a knowing, voluntary, and intelligent waiver occurred:

> (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se.

*Poynter*, 749 N.E.2d at 1127-28 (quoting *United States v. Hoskins*, 243 F.3d 407, 410 (7th Cir. 2001) (finding defendant's conduct to be sufficient to imply

waiver, and that trial court's inquiry was sufficient and provided explicit warning of consequences of continued conduct)).

[17] Regarding the first factor, the trial court, here, inquired repeatedly and extensively into Dullen's decision to represent himself. The trial court asked Dullen no less than three times, over two hearings, whether he was sure he wanted to waive his right to counsel and, instead, represent himself. *Tr.* at 24-26, 36-38, 64-65. Dullen clearly stated that he knew he had the right to appointed counsel at no charge, but on each occasion refused counsel. *Id.* at 25-26, 36-37, 64-65. Dullen also signed an advisement of rights form in connection with the Community Corrections violation, which again informed him that he had the right to counsel. *Appellant's App.* at 150. At one point the trial court did, in fact, appoint "counsel for the time being." *Tr.* at 27. Nevertheless, Dullen served as his own counsel at the evidentiary hearings for the Community Corrections violation.

[18] As to the second factor, the trial court explained to Dullen the dangers and disadvantages of self-representation, saying, "My concern is if you don't have legal experience or training, you might miss an issue or some mitigating factor that an attorney might be able to spot on your behalf," and "I would also tell you, if I was in your situation, I would want to talk with an attorney before making any decisions." *Id.* at 26. The trial court also cautioned, "[I]f I was in your shoes, I would want to talk with a lawyer before I made any decisions regarding the Community Corrections violation. . . . The thing is you're looking at, if they prove the violation, the Court would likely order that you be

returned to the Department of Correction to finish out the sentence." *Id.* at 37. The trial court also advised Dullen, that he would be "held to the same standard as any other attorney would be in representing yourself." *Id.* at 47.

[19] In connection with the third factor, Dullen had extensive background and experience with the legal system. Dullen had been charged with crimes on more than twenty separate occasions, and he was convicted of more than ten crimes, many of which were felonies. Dullen was familiar enough with the legal system that, while in jail and acting pro se, he filed several pleadings, including two motions to correct erroneous sentence, a petition for an order clarifying concurrent sentencing, and a petition for waiver of Community Corrections fees. *Appellant's App.* at 99, 112, 128, 146.

[20] Concerning the fourth factor, Dullen alleged that his decision to proceed pro se was a result of his concern that he did not believe that he was being well served by Public Defenders. Whether true or not, Dullen had the right to have appointed counsel, and he opted to act as his own counsel.

[21] We, therefore, conclude that Dullen was not denied his Sixth Amendment right to counsel and that the trial court properly determined that his waiver of his right to counsel was knowing, voluntary, and intelligent. Accordingly, we decline to disturb the trial court's finding that Dullen committed a violation of his terms of Community Corrections. Affirmed.

[22] Mathias, J., and Brown, J., concur.