## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 29 2016, 10:22 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Deborah Markisohn<br>Indianapolis, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| | Jesse R. Drum<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lynn Wooden,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 29, 2016<br><br>Court of Appeals Case No.<br>49A05-1412-CR-574<br><br>Appeal from the Marion Superior Court<br><br>The Honorable John M.T. Chavis II, Judge<br><br>Trial Court Cause No.<br>49F15-1307-FD-46844 |

**Pyle, Judge.**

## Statement of the Case

Lynn Wooden ("Wooden") appeals his conviction by jury of two counts of Class D felony resisting law enforcement[1] and one count of Class A misdemeanor driving while suspended.[2] His sole argument is that that he did not make a knowing, voluntary, and intelligent waiver of his right to counsel. Because the facts and circumstances of the case reveal that, among other things, Wooden was advised of the dangers and disadvantages of representing himself, we conclude that the waiver of his right to counsel was knowing, voluntary, and intelligent. We therefore affirm his convictions.

We affirm.

## Issue

> Whether Wooden's waiver of his right to counsel was knowing, voluntary, and intelligent.

## Facts

On July 17, 2013, fifty-three-year-old Wooden made a left turn without using his turn signal. Indianapolis Metropolitan Police Department Officer Christopher Shaw ("Officer Shaw") activated his lights and sirens, and Wooden

---

[1] IND. CODE § 35-44.1-3-1. This statute was amended effective July 1, 2014, and Wooden's offense would now qualify as a Level 6 felony. However, because Wooden committed this offense in 2013, we will apply the statute in effect at that time.

[2] IND. CODE § 9-24-19-2.

pulled over. As Officer Shaw was walking to Wooden's car, Wooden drove away. Officer Shaw and Officer John Schwerrs ("Officer Schwerrs") pursued Wooden, who eventually stopped under an overpass. The officers got out of their cars with their guns drawn and yelled at Wooden to show his hands. Wooden, however, reached for the center console in his car. As the officers approached the car, Wooden rolled up the window and locked his doors while continuing to reach for the console. Officer Schwerrs broke the driver's side window with his baton while another officer reached in the window, unlocked the door, and opened it. The officer grabbed Wooden's arm and pulled him out of the car.

[4] Wooden struggled with the officer and explained that "he was a member of the Moorish Nations, and that the laws of the State of Indiana or the United States [did not] apply to him, and [he was] allowed to travel as he please[d] without being stopped or bothered." (Tr. 124-25). The officers discovered that Wooden's driver's license was suspended with prior convictions, and that he had two outstanding warrants in Marion County for driving while suspended.

[5] At Wooden's July 18, 2013, initial hearing, a master commissioner pointed out that Wooden had "been arrested a lot of times and convicted. So you know how the law works." (Tr. 164). The commissioner also told Wooden that he had the right to be represented by counsel and encouraged Wooden to hire an attorney. When Wooden responded that he would not hire an attorney, the commissioner further explained as follows:

[T]hat's up to you. You absolutely have the right to make a bad decision about whether to be represented by counsel or not. When you go to court on Tuesday, there will be an attorney there called the prosecuting attorney whose job it is to enforce the law. . . . So if you change your mind between now and then, and seek to hire counsel to help you to make a defense against those charges . . . you have a right to do that, and I would encourage you to do that.

(Tr. 165-66).

Five days later, at Wooden's first pretrial hearing, Wooden told the trial court that he did not plan to hire an attorney. The trial court responded that it would "highly recommend getting an attorney – you know, whether you get your own or you use Ms. Sanders [who had been appointed to represent Wooden]. Ms. Sanders is a highly capable attorney; she's in my court more than most other lawyers are. She knows how I do things. So – I would recommend using her." (Tr. 176). When Wooden asked about jurisdictional issues, the trial court explained, "that's something you need to raise with your attorney, discuss with your attorney. Your attorney's going to be equipped – somebody who's gone to three years of law school and has also practiced in this court. The attorney will be equipped to evaluate the viability of your jurisdictional claims." (Tr. 177).

The trial court further explained:

Trust me when I say . . . [t]here's some stuff I know that you don't know about the law. . . . Ms. Collins has gone to law school, and she's been practicing in the Prosecutor's Office. She'll make certain objections, and they might be viable objections that I grant that would not allow you to say stuff. And

you may not know why you can't say stuff. . . . The law may prohibit you from offering certain things into evidence . . . . I don't want you to harm your case and any defenses you may have because you don't know about . . . the law. . . . If you decide after all that, I still want to go pro se, that's fine. . . . I won't treat you any differently. But . . . that works both ways. I will treat you as somebody who's gone to law school, who has read the Rules of Evidence, and who's passed the Bar Exam. I'll treat you the same way. Now, if you haven't done all that – then you're putting your case in jeopardy. . . . [D]id you not wish the Public Defender Agency to represent you?

(Tr. 179-80). Wooden responded that he would "not accept benefits from the Public Defender – no benefits from this Court whatsoever." (Tr. 180).

[9] At a pretrial conference in April 2014, Wooden asked the trial court about obtaining a copy of a video from Langley Productions, the company that produces the television show, *COPS*, which was filming when Wooden was arrested. Wooden believed that the video had been purposely destroyed. The trial court responded to Wooden's concerns as follows:

Now – what you need to do is if you believe that somehow . . . they destroyed evidence, then you need to raise that issue at trial. . . . Maybe you can create some kind of negative or rebuttable presumption that somehow if that tape was available. . . . Now, I'm not going to educate you on what a lawyer would do because that's not my job. I know what I would do if I was practicing law – which I did eighteen years before taking the bench. I know what I would do; I'm not telling you that, because that's not my role. That's the thing about having an attorney. But you're free to represent yourself. But there might be a way that somebody could raise that issue at trial. Somebody who's experienced in doing that could raise that issue at trial. Maybe somebody could

create some kind of rebuttable presumption or adverse presumption that if that evidence were available, that evidence would be favorable to me, and not favorable to the State. I don't know; I can't give you that advice.

(Tr. 280). The trial court also reminded Wooden that he could request an attorney any time before trial.

[10] Wooden failed to appear for his scheduled jury trial on September 17, 2014. A few days later at the arrestee processing center, Wooden told a master commissioner that the police "hid the video from *COPS*." (Tr. 371). The commissioner responded that she was sorry for Wooden's frustration. She further explained Wooden's need for an attorney as follows, "normally a person in your situation would be represented by an attorney. And an attorney would know the proper methods to go through, the proper avenues to go request all of that evidence. The Court normally doesn't get evidence from people." (Tr. 371).

[11] A few days later at a pretrial hearing, Wooden told the trial court that he did not ask for a trial or tell the court that he was going to represent himself. The trial court responded as follows:

> You wanted to represent yourself a long time ago – matter of fact, I appointed Ms. Anne Sanders, who's an excellent . . . attorney. And she could have helped you on this matter. But you did not work with her, and then you said that you wanted to represent yourself. Now, if – if that has changed, we can revisit that issue. . . . I think it's wise to have a representative – somebody who's trained in the law, somebody who knows how

to navigate the Rules of Evidence and what have you, to make sure that you don't put your own head in the noose . . . . [W]e could revisit that issue.

(Tr. 380). Wooden told the trial court that he just wanted the discovery materials he had requested so he could proceed, and the trial court responded as follows:

> We've gone through the discovery issue time and time again. We're at the point where this case needs to go forward. . . . This case has got to be over a year old . . . . Now if you believe that you have an issue with discovery and what have you, that's where the benefit of having a lawyer to represent you . . . she can . . . sift through it and find out what is legitimate and what is not. . . . [I]n my opinion, I believe that you should consider working with an attorney. That's my opinion. . . . You're free to do what you want to do . . . I believe that you have sufficient intelligence, knowledge, and education to represent yourself. The problem is, that's from a *basic* standpoint; that's not from a legal standpoint, in that you're not going to know the rules of evidence. You're not going to know certain case law and what have you germane to this case. So there could be something that you say or do – or there's something that you don't say or do – that could have an adverse impact on what happens to you. . . . I always think that one should be represented by somebody who's trained to do this job.

(Tr. 382-85).

[12] At the final pretrial conference, the trial court granted the State's motion to appoint standby counsel. The trial court held Wooden's jury trial on October 22, 2014. At a sidebar discussion, before the jury was selected, Wooden asked for assistance from his standby counsel "if me and her can come to an

understanding." (Tr. 31-32). However, before trial started, Wooden decided that he did not want Sanders' assistance or to attend the trial. After telling the trial court that it was incompetent, Wooden left the court room, and the trial court held his trial without him.

[13] A jury convicted him as charged, and the trial court sentenced him to 730 days with 606 days suspended for each conviction of resisting law enforcement, and 365 days with 241 days suspended for driving while suspended. The trial court ordered all sentences to run concurrent to each other. Wooden appeals his convictions.

## Decision

[14] Wooden's sole argument is that his waiver of counsel was not knowing, voluntary, and intelligent. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to counsel. *McBride v. State*, 992 N.E.2d 912, 917 (Ind. Ct. App. 2013), *reh'g denied*, *trans. denied*. Implicit in the right to counsel is the right to self-representation. *Drake v. State*, 895 N.E.2d 389, 392 (Ind. Ct. App. 2008). However, before a defendant waives his right to counsel and proceeds pro se, the trial court must determine that the defendant's waiver of counsel is knowing, voluntary, and intelligent. *Jackson v. State*, 992 N.E.2d 926, 932 (Ind. Ct. App. 2013), *trans. denied*. We review de novo the trial court's determination that a defendant waived his right to counsel. *McBride*, 992 N.E.2d at 917.

"'It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts.'" *Hopper v. State*, 957 N.E.2d 613, 617-18 (Ind. 2011) (quoting *Faretta v. California*, 422 U.S. 806, 807 (1975)). The defendant who waives his right to counsel and asserts his right to self-representation should therefore be informed of the dangers and disadvantages of doing so. *Parish v. State*, 989 N.E.2d 831, 838 (Ind. Ct. App. 2013). The Indiana Supreme Court has explained that there are no specific "talking points" a trial court must follow when advising a defendant of the dangers and disadvantages of proceeding without counsel. *Poynter v. State*, 749 N.E.2d 1122, 1126 (Ind. 2001). Rather, a trial court needs only to come to a "considered determination" that the defendant is making a knowing, voluntary, and intelligent waiver of his right to counsel. *Id.*

The Indiana Supreme Court has adopted four factors for a trial court to consider when determining whether a knowing, voluntary, and intelligent waiver has occurred:

> (1) the extent of the court's inquiry into the defendant's decision; (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation; (3) the background and experience of the defendant; and (4) the content of the defendant's decision to proceed pro se.

*Id.* at 1127-28. When applying these factors, the trial court is in the best position to assess whether a defendant has made a knowing, voluntary, and intelligent waiver. *Id.* at 1128. The trial court's decision will most likely be

upheld where the court has made the proper inquiries, conveyed the proper information, and reached a reasoned conclusion. *Id.*

[17] Here, our review of the transcript reveals that from the time of his initial hearing on July 18, 2013, until his jury trial on October 22, 2014, Wooden attended at least seventeen hearings where he was repeatedly advised of his right to counsel and the dangers and disadvantages of representing himself. Specifically, two commissioners and one trial court judge warned Wooden that not having counsel could harm his case and any possible defenses. In addition, the trial court told Wooden that even though he had the intelligence to represent himself, he had not gone to law school, read the rules of evidence, or passed the bar exam. Wooden was advised that he would be "legally outmatched" by the prosecutor. (State's Br. 12).

[18] Wooden was also advised of the advantages of having an attorney. For example, the trial court advised him that an attorney would have gone to law school and passed the bar exam. An attorney would have been able to evaluate Wooden's discovery issues and jurisdictional claims and would have had courtroom experience.

[19] With regard to the other *Poynter* factors, Wooden had experience with the law because he had been arrested and convicted in the past for similar charges. When Wooden was arrested for the current offenses, he had two outstanding warrants for driving while suspended. In addition, the State is correct that Wooden "made his reasons for rejecting representation clear." (State's Br. 12).

As a member of the Moorish Nation, Wooden did not believe the laws of Indiana applied to him, and he did not think the trial court had jurisdiction over him. He also accused the trial court of being incompetent before choosing not to attend his trial.

[20] Based on the foregoing, the trial court properly determined that Wooden's waiver of his right to counsel was knowing, voluntary, and intelligent. We, therefore, affirm the trial court.

[21] Affirmed.

[22] Vaidik, C.J., and Robb, J., concur.