## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 08 2016, 8:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeremy K. Nix
Matheny, Hahn, Denman & Nix, L.L.P.
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeremiah Barnaby Ricks,

*Appellant-Defendant,*

*v.*

State of Indiana,

*Appellee-Plaintiff.*

July 8, 2016

Court of Appeals Case No.
35A05-1602-CR-342

Appeal from the Huntington
Superior Court

The Hon. Jeffrey R. Heffelfinger,
Judge

Trial Court Cause No. 35D01-1511-F6-250

**Bradford, Judge.**

# Case Summary

[1]     On October 11, 2015, Appellant-Defendant Jeremiah Ricks violently attacked Jeremy Voland while both were incarcerated in Huntington County.  Ricks

punched Voland several times in the face, breaking Voland's nose and causing him to require stitches. The State charged Ricks with Level 6 felony battery, and Ricks waived his right to counsel, choosing to represent himself. A jury ultimately convicted Ricks of Level 6 felony battery, and the trial court sentenced him to two-and-one-half years of incarceration. Ricks contends that his waiver of trial counsel was invalid and that his sentence in inappropriately harsh. Concluding that Ricks's arguments lack merit, we affirm.

## Facts and Procedural History

On October 11, 2015, Ricks, Voland, and Taz Dowdy were inmates in the Huntington County Jail. At around midday, Ricks was "hanging out" with Dowdy in the cell shared by Dowdy and Voland. Tr. p. 101. Voland, who was nearby, observed Ricks going through his things, which he kept in a box. When Voland confronted Ricks and took back his box, Ricks began punching him in the face with a closed fist. Ricks hit Voland approximately nine times, and, although Voland did turn away and cover his face, he did not attempt to hit Ricks. Voland received nine stitches for a cut on his forehead and suffered a broken nose, which he reset himself, causing "excruciating" pain. Tr. p. 106. Voland has suffered severe headaches since the incident, which he did not suffer before. Approximately a week-and-a-half before trial, Voland encountered Ricks, who told Voland that he "better just say that I was swinging on him, too." Tr. p. 109.

[3] On November 18, 2015, the State charged Ricks with Level 6 felony battery. On November 24, 2015, at the initial hearing, the trial court advised Ricks of his right to counsel: "You are advised that you have the absolute right to hire an attorney at all critical stages of these proceedings." Tr. p. 17. At a hearing on December 1, 2015, Ricks indicated that he desired to represent himself. Although Ricks indicated that he had never represented himself before, he also indicated that he had experience with the legal system, experience with discovery, experience with cross-examination, and had earned his GED. The trial court then advised Ricks as follows:

> THE COURT: Okay. Do you understand the Court is advising you that you may [be] at a disadvantage [in] representing yourself. The Court will not give you any assistance with regard to filing any Motions, with regard to legal advice on how to proceed, and if it proceeds to trial the court will not give you any assistance in jury selection, in making opening statements, in conducting any of your examination and in making closing statements, in preparing and submitting written jury instructions. You are on your own on those. Do you understand that?
>
> DEFENDANT: Yes, your Honor.

Tr. p. 29.

[4] On February 2, 2016, the State moved to amend its charging information to include a charge of Class A misdemeanor battery. Jury trial was held on February 4, 2016, after which the jury found Ricks guilty of Level 6 felony battery. That day, the trial court conducted a sentencing hearing. The State noted Ricks's prior convictions for two felonies and several misdemeanors and that Ricks had committed two offenses since being incarcerated in the

Huntington County Jail since March of 2015: possession of marijuana and the instant battery. The State also noted that Ricks had a pending theft case in Adams County. The trial court cited Ricks's criminal history, the offenses committed while incarcerated in Huntington County Jail, the severity of Voland's injuries, Ricks's pending felony charge, and the videotape of the incident indicated which that "[he] and Mr. Dowdy gave a fist to fist" afterwards. Tr. p. 199. The trial court sentenced Ricks to two-and-one-half years of incarceration.

# Discussion and Decision

## I. Waiver of Counsel

[5] Ricks contends that his waiver of counsel was not made voluntarily and intelligently.

> The Sixth Amendment, applicable to the states through the Fourteenth Amendment, guarantees a criminal defendant the right to counsel before he may be tried, convicted, and punished. *Faretta v. California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). This protection also encompasses an affirmative right for a defendant to represent himself in a criminal case. *Id.* However, "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Id.* at 834, 95 S. Ct. 2525. Because the defendant who waives his right to counsel and proceeds to trial unrepresented is forgoing "many of the traditional benefits associated with the right to counsel.... the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Id.* "[H]e should be made aware of the dangers and disadvantages of self-representation, so that that the record will

establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 835, 95 S. Ct. 2525 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942)).

There is no particular formula or script that must be read to the defendant. The information that must be given "will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S. Ct. 1379, 158 L. Ed. 2d 209 (2004).

Courts determining whether a waiver of counsel for trial was made voluntarily and intelligently must consider (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se. We have drawn these factors from case law in the Seventh Circuit, *see United States v. Hoskins*, 243 F.3d 407 (7th Cir. 2001), and applied them in situations as diverse as trial for battery, *Poynter v. State*, 749 N.E.2d 1122 (Ind. 2001), and for capital murder, *Kubsch v. State*, 866 N.E.2d 726 (Ind. 2007).

*Hopper v. State*, 957 N.E.2d 613, 617-18 (Ind. 2011).

[6] The trial court thoroughly informed Ricks of the perils of self-representation, advising him that he may be at a disadvantage representing himself. The trial court also advised Ricks that it would not give him legal advice on how to proceed or any assistance with filing motions, jury selection, making opening statements, witness examination, making closing statements, or preparing and submitting written jury instructions. The trial court made it clear to Ricks that

"[y]ou are on your own on those." Tr. p. 29. Ricks has not established that the trial court failed to adequately advise him of the perils of self-representation.

[7] The trial court also inquired into Ricks's background and education. Ricks indicated that he had previous experience in the legal system, as his somewhat extensive criminal history would indicate.[1] Ricks also indicated that he has experience with discovery and cross-examining witnesses in depositions. The record supports a finding that he might be better prepared than most to represent himself in a criminal proceeding. Following the trial court's advisements and inquiries, Ricks reaffirmed his decision to represent himself.

[8] Finally, the context in which Ricks's decision was made does not indicate any lack of understanding or voluntariness on his part. There is no hint of coercion or exertion of pressure by the State, the trial court, or anyone else. Ricks indicated early in the process that he wished to represent himself, and never wavered until he lost. Overall, application of the factors identified by the Indiana Supreme Court leads us to conclude with little hesitation that Ricks's waiver of his right to counsel was knowing, intelligent, and voluntary. *See, e.g.*, *Jackson v. State*, 992 N.E.2d 926, 933 (Ind. Ct. App. 2013) (concluding that waiver of counsel was valid where trial court advised defendant of perils of self-representation, defendant had little formal education but ample experience with

---

[1] Ricks's familiarity with the criminal justice system is demonstrated when, at the hearing where he expressed his desire to represent himself, he also requested a suppression hearing, a deposition, and a "fast and speedy" trial. Tr. p. 30.

criminal justice system, defendant seemed to have reasonable tactical reason to represent himself as he believed public defender had conflict of interest, and there was no indication of coercion), *trans. denied*.

## II. Whether Ricks's Sentence is Inappropriate

[9] We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "The defendant has the burden of persuading us that his sentence is inappropriate." *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008).

[10] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State,* 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id*. Whether a sentence is inappropriate

ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224. Here, Ricks received a two-and-one-half year sentence, which is the maximum sentence he could have received for Level 6 felony battery. *See* Ind. Code § 35-50-2-7(b) ("A person who commits a Level 6 felony (for a crime committed after June 30, 2014) shall be imprisoned for a fixed term of between six (6) months and two and one-half (2 ½ ) years, with the advisory sentence being one (1) year.").

[11] The nature of Ricks's offense justifies an enhanced sentence. For no apparent reason, Ricks viciously attacked Voland, punching him in the face approximately nine times. Moreover, Ricks's actions could very easily have supported a more serious battery charge. Serious bodily injury, which Indiana Code section 35-31.5-2-292 defines as bodily injury that causes "extreme pain[,]" can support a charge of Level 5 felony battery. Voland, who made no attempt to fight back against Ricks, suffered a cut requiring ten stitches and a broken nose. Voland's broken nose caused him "excruciating" pain when reset. Additionally, Voland now suffers headaches severe enough to have caused him to seek hospitalization on three to four occasions since the attack. Voland's injuries could easily have supported a conviction for Level 5 felony battery, and fully justify Ricks's enhanced sentence for Level 6 felony battery.

[12] Ricks's character also justifies a fully-enhanced sentence. Ricks's extensive criminal history reflects very poorly on his character, including prior convictions for Class B felony robbery; Level 6 felony theft; Class A

misdemeanors operating a vehicle while intoxicated and operating a vehicle never having had a license; Class B misdemeanor marijuana possession; and Class C misdemeanors minor consuming alcohol, criminal trespass, false informing, and three counts of operating a vehicle never having had a license. The probation imposed following Ricks's robbery conviction was revoked, resulting in the execution of two previously-suspended years of his sentence. At the time of his trial in this matter, Ricks had a pending charge for Level 6 felony theft in Adams County. Ricks, who was born on October 7, 1984, has been incarcerated or on probation most of the time since 2003. Despite Ricks's frequent convictions, incarcerations, and other contacts with the criminal justice system, Ricks has not chosen to conform his behavior to the norms of society. Ricks has not established that his two-and-one-half-year sentence for Level 6 felony battery is inappropriate in light of the nature of his offense and his character.

[13] The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.